IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CAROL BETH TILLEY,              )
                               )
            Plaintiff,          )
                               )
v.                             )          Case No. 06-2304-JPO
                               )
GLOBAL PAYMENTS, INC.,          )
                               )
            Defendant.          )

**MEMORANDUM AND ORDER**

I.   Introduction

The plaintiff, Carol Beth Tilley, alleges the defendant, Global Payments, Inc., acted willfully or negligently in reviewing her credit information and reporting it to credit reporting agencies, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* This case is now before the court[1] on defendant's motion for summary judgment **(doc. 179)**. The instant motion has been fully briefed (*see* docs. 180, 188, & 193), and the court is now ready to rule.

II.   Facts[2]

------

[1] On June 5, 2008, by consent of both parties, this case was reassigned for disposition from Hon. Julie A. Robinson, U.S. District Judge, to the undersigned U.S. Magistrate Judge, James P. O'Hara (*see* doc. 194).

[2] The court, of course, construes the facts in the light most favorable to plaintiff as the nonmoving party pursuant to Fed. R. Civ. P. 56. Immaterial facts and those not properly supported by the record are omitted. When necessary, additional facts are included in the analysis section of this memorandum and order.

In August 2002, plaintiff owned a business called Tilley Sports Apparel, which sold t-shirts, among other things.  Plaintiff arranged to have a merchant account with defendant, which enabled Tilley Sports Apparel to accept credit cards for purchases.  Tilley Sports Apparel was an unincorporated, sole proprietorship, so plaintiff provided defendant her social security number as the tax identification number for the business.

On or about August 22, 2002, plaintiff received an unsolicited e-mail directed to Tilley Sports Apparel from an individual she had never met.  In the e-mail, the sender stated that his name was "Rev Mahmoud Sidi" and that his address was in "Ghana West Africa." The sender requested plaintiff send him hundreds of t-shirts for a total cost of approximately $10,000, which he asked plaintiff to split over four different credit cards.  After receiving the order, plaintiff contacted defendant and told it about the order.  Defendant told her to run the credit cards and to call back on the following Monday.  Plaintiff then ran the credit cards. Plaintiff called defendant on the following Monday and gave it the approval numbers for the credit cards.  Defendant told her the credit cards were fine and that she could process and ship the order.  Plaintiff had the money from the order in her account that same Monday and shipped the t-shirts on Thursday.

On September 16, 2002, plaintiff received a sales draft request from defendant, dated September 11, 2002, indicating there was no cardholder authorization for one of the credit cards plaintiff processed.   The transaction amount listed on the sales draft request is $2,487.38.  Although unable to provide copies of sales draft requests for the other three

credit cards, defendant asserted it was entitled to $9,949 from plaintiff.

In October 2002, defendant reported to Experian Information Solutions, Inc. ("Experian") a debt in the amount of $9,949.   The debt was reported for the credit file maintained under plaintiff's social security number.

Defendant sometimes worked with a collection agency, Capstone Financial Management, LLC ("Capstone").   It was defendant's practice that if it did not know if a debt had been paid or if information had been purged from its systems, it would contact the assigned collection agency or person whom it contended was indebted to defendant and ask if the debt had been paid.   If the response was the debt had been paid, defendant would have the collection agency or person send written proof of the payment.   Defendant's system would identify if a matter had been handed over to a collection agency.   Defendant has a contact person at the collection agencies it has referred matters.

On November 11, 2002, Capstone received plaintiff's debt to defendant.   In May 2003, defendant approved a settlement of the debt in full for $3,107.   Capstone received a check from plaintiff for $3,107 on May 13, 2003.

Defendant's system would identify if a matter had been handed over to a collection agency.   But defendant did not have a policy or procedures for governing how the collection agency was to handle the matter, just an expectation that it would act within the law.   Nor did defendant have any written policy or procedures governing how it was to update its records when a collection agency reported back to it that a dispute had been settled.   Although

defendant's procedure was to update its records to indicate a dispute had been settled, defendant's system ("Oracle") was *not* updated to indicate its dispute with plaintiff had been settled.

Defendant purges its merchant account system ("MAS") after six months of non-activity, except for demographic information about the customer such as name, address, telephone number, merchant identification number, and federal tax identification number. This information is maintained by defendant either in a database or on CD. Besides the MAS, defendant has two other systems, Oracle and Cadre, that are not purged.

In June 2003, TransUnion L.L.C. ("TransUnion") updated the credit file maintained under plaintiff's social security number to reflect a debt owed to defendant in the amount of $9,949. The debt was initially reported for the credit file maintained under plaintiff's social security number. TransUnion cannot say when it first received the report from defendant, although defendant's documents reveal it made the report on June 1, 2003.

According to Experian, on October 9, 2003, it sent a notice to defendant of a formal dispute from plaintiff that the debt to defendant was showing as unpaid. Experian further states that, having received no timely response from its October 9, 2003 inquiry, it updated defendant's account in plaintiff's credit file on November 7, 2003 to show the debt was paid.

On October 21, 2003, in response to a formal notice of dispute made by plaintiff to TransUnion, which was communicated to defendant, defendant verified the debt information it initially reported to TransUnion regarding plaintiff in October 2002 was still correct.

Capstone sent defendant an e-mail on November 6, 2003 indicating the settlement of plaintiff's account was reported to the credit bureau agencies in June 2003 and the account needed to be removed from her credit bureau information as soon as possible. An analyst with defendant sent an e-mail back to Capstone that same day indicating she mailed the information to the credit bureaus. Capstone forwarded the e-mails to plaintiff on November 7, 2003.

In November 2003, CSC Credit Services, Inc. ("CSC") and Equifax Information Services, LLC ("Equifax") updated their credit file maintained under plaintiff's social security number to reflect a debt owed to defendant in the amount of $9,949. CSC and Equifax cannot say when they first received the report from defendant, although defendant's documents reveal it made the report on June 1, 2003. CSC and Equifax documents indicate defendant reported this information to them in November 2003.

CSC, Experian, Equifax, and/or TransUnion were not able to find any document or thing mailed or sent to any of them by defendant in November 2003 requesting them to delete, remove, or correct defendant's entry on plaintiff's credit reports. Defendant has not produced in this litigation a copy of any communication it sent to CSC, Experian, Equifax, and/or TransUnion in November 2003 relating to plaintiff.

On September 6, 2005, in response to a formal notice of dispute made by plaintiff to CSC, which was communicated to defendant, defendant verified the debt information as being reported correctly. Defendant reported plaintiff's debt to CSC as "charged to profit

and loss," meaning it was written off as uncollectible.  Defendant has admitted that reporting its entry against plaintiff as charged to profit and loss was incorrect.  Rather, defendant should have reported that plaintiff paid the debt in full and nothing was owed to defendant by plaintiff.  Plaintiff contacted defendant on September 24, 2005 regarding the debt and was told a couple of days later that defendant did not have any record of her having paid the debt.

Around October 5, 2005, one of defendant's in-house counsel told plaintiff that defendant's entry against her would be removed with all credit reporting agencies within forty-eight hours.  A representative of defendant also told plaintiff around November 7, 8, or 9, 2005 that defendant's entry would be removed within forty-eight hours.  On November 9, 2005, the representative indicated in writing she requested all three credit reporting agencies remove the debt, but defendant admits it had not sent requests to Experian and TransUnion.

On November 6, 2005, defendant sent an electronic update to Equifax and CSC asking its account in plaintiff's credit file be deleted.  Equifax and CSC deleted defendant's account in plaintiff's credit file by or about November 10, 2005.

On May 1, 2006, TransUnion deleted defendant's entry in the credit file maintained under plaintiff's social security number based upon a letter, dated April 25, 2006, it received from a lawyer for plaintiff.  Attached to the letter from plaintiff's lawyer was correspondence from defendant, dated November 9, 2005, showing the debt to defendant had been resolved.

On May 2, 2006, defendant sent an electronic update to Experian asking its account

in plaintiff's credit file be deleted.  Experian deleted defendant's account in plaintiff's credit file by or about May 3, 2006.

Plaintiff testified she felt humiliated as result of defendant's actions.  Specifically, plaintiff felt humiliated when she told her credit card companies multiple times the debt had been paid, settled in full, and should never have appeared on her credit report; when she was told by defendant twice in writing it was going to be removed from her credit reports and it was not; when she was unable to put braces on her son's teeth, take care of her kids, obtain loans to send her son to college who then had to join the military and serve in Iraq; in September 2005 when CSC reported that defendant was still verifying the debt; on November 16, 2005 when she pulled her credit reports and defendant's entry was still there, even though it had assured her on November 9, 2005 it would be removed with all credit reporting agencies within forty-eight hours; and in January 2006 when defendant had still not removed its entry with all of the credit reporting agencies.

Plaintiff claims the interest rates on several of her personal credit cards greatly increased after defendant's entry appeared on her credit history, and then her credit score went down by fifty-one points once defendant's entry was removed from her credit history. Plaintiff spoke with a representative from one of her credit cards who indicated her rate increased due to an item between $9,000 and $10,000 on her credit report, which she asserts must have been defendant's entry.  Plaintiff had previously paid payments late with different creditors and had outstanding credit card debt of approximately $33,000.

Plaintiff claims she was denied credit by Cypress Financial Corp., Lamar Bowling Supply, First Priority Acceptance, Financial Pacific Leasing, LLC, and Preferred Lease as a result of her account with defendant.  Plaintiff admits all of these credit applications were for a new scoring system at her bowling alley, Jayhawk Bowl, LLC.

On July 25, 2006, plaintiff filed a complaint alleging defendant, and others who have since been dismissed, violated FCRA (*see* docs. 1, 145, & 171-73).  Plaintiff also asserted a defamation claim against defendant.

### III.   Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact" and it is "entitled to judgment as a matter of law."[3]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party bears the initial burden of demonstrating an absence of a genuine

---

[3] Fed. R. Civ. P. 56(c).

[4] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[5] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Id.* (citing *Anderson*, 477 U.S. at 248).

issue of material fact and entitlement to judgment as a matter of law.[7]  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]  "On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim or defense."[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits

---

[7] *Id.* at 670-71.

[8] *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[9] *Media Servs. Group, Inc. v. Lesso, Inc.*, 45 F. Supp. 2d 1237, 1239 (D. Kan. 1999).

[10] *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).

[11] *Anderson*, 477 U.S. at 256.

[12] *Adler*, 144 F.3d at 671 (internal quotation omitted).

incorporated therein."[13]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[14]

## IV.   Analysis

### A.    FCRA Liability

#### 1.    Duties of Furnishers of Information

FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."[15] "FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies."[16] Although FCRA does not define it, courts have defined the term furnisher of information "as an entity which transmits information concerning a particular debt owed by

---

[13] *Id.*

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] 15 U.S.C. § 1681(b).

[16] *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002).

a particular consumer to consumer reporting agencies."[17]  Defendant does not dispute it is

a furnisher of information within the meaning under § 1681s-2 of FCRA.

Section 1681s-2 imposes two sets of duties on furnishers of information.  First, under

§ 1681s-2(a), furnishers of information have a general duty to provide accurate information

to a consumer reporting agency.  Significantly, Congress did not create a private right of

action for violations of § 1681s-2(a).[18]  These duties can only be enforced by governmental

agencies and officials.[19]

Second, under § 1681s-2(b), furnishers of information have a duty, after receiving

notice from a consumer reporting agency of a dispute by a consumer regarding the

completeness or accuracy of an account, to:  (1) conduct an investigation with respect to the

disputed information; (2) review all relevant information provided by the consumer reporting

agency; (3) report the results of the investigation to the consumer reporting agency; (4) if the

investigation finds the information is incomplete or inaccurate, report those results to *all*

other consumer reporting agencies to which it furnished the information and that compile and

maintain files on consumers on a nationwide basis; and (5) to promptly modify, delete, or

permanently block the reporting of information to consumer reporting agencies that is

---

[17]*Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1352 n.1 (D. Kan. 2006).

[18]§ 1681s-2(c)(1) & (d); *Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1253 (D. Kan. 2003); *Aklagi*, 196 F. Supp. 2d at 1192.

[19] *Pinson v. Equifax Credit Info. Servs., Inc.*, No. 06-CV-162-GKF-SAJ, 2008 WL 906222, at *2 (N.D. Okla. Mar. 31, 2008).

disputed by a consumer and found to be inaccurate or incomplete or cannot be verified after the required reinvestigation.

This second component of § 1681s-2 does create a private cause of action by a consumer against a furnisher of credit information.[20]  Specifically, a consumer may obtain her actual damages, costs of the action, and attorney's fees if a furnisher of information is negligent in failing to comply with a requirement of § 1681s-2(b).[21]  FCRA also provides that a consumer may obtain statutory and punitive damages, as well as costs and attorney's fees, against a furnisher of information who willfully fails to comply with any requirement of § 1681s-2(b).[22]

It is important to keep in mind that the duties of furnishers of information imposed under § 1681s-2(b) are only triggered after the furnisher receives notice of a consumer's dispute from a consumer reporting agency.[23]  As alluded to earlier, regardless of which consumer reporting agency notified a furnisher of information of a consumer dispute, a furnisher may have duties related to the *other* consumer reporting agencies, such as reporting that information was found to be incomplete or inaccurate or modifying, deleting, or blocking the reporting of the information.  The court therefore flatly rejects defendant's implied

---

[20]*Aklagi*, 196 F. Supp. 2d at 1193.

[21]§ 1681o(a).

[22]§ 1681(n)(a).

[23]*Pinson*, 2008 WL 906222, at *3; *Aklagi*, 196 F. Supp. 2d at 1193.

arguments that it can only be liable for its response to the credit agency which received plaintiff's dispute.[24]

2.      Statute of Limitations

As earlier indicated, plaintiff filed this case on July 25, 2006.  Defendant argues that FCRA's statute of limitations bars all of its conduct from being actionable, except for its September 6, 2005 response to plaintiff's dispute to CSC.  Defendant relies on the current version of FCRA's statute of limitations section, 15 U.S.C. § 1681p.  Because § 1681p was amended in 2003, in the middle of the events surrounding this case, the court will briefly address the previous version's applicability.

The previous version of § 1681p stated that an action must be brought

> within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this title to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this title, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.[25]

Under the current § 1681p, an action to enforce liability under FCRA must be brought "two

---

[24]The court declines to address defendant's argument that it did not have the authority to correct TransUnion credit reports.  Under FCRA, defendant may have been required to at least report that information was inaccurate to all consumer reporting agencies to which it furnished the information.  § 1681s-2(b)(1)(D).  Regardless, plaintiff has presented evidence that defendant reported inaccuracies to TransUnion regarding other customers.

[25]Fair Credit Reporting Act, Pub. L. No. 91-508, 84 Stat. 1134 (1970) (current version at 15 U.S.C. § 1681p).

years after the date of discovery by the plaintiff of the violation that is the basis for such liability."[26]

The current version of § 1681p became effective March 31, 2004.  The prior version of § 1681p is applicable to claims that arose prior to March 31, 2004.[27]  Although both versions include a two-year time limit, the prior version includes only a limited discovery rule, whereas the current version includes a general discovery rule, i.e., the prior version is more restrictive of what conduct can form the basis for plaintiff's claims.  In any event, because neither party saw fit to address the earlier version of the statute of limitations in their voluminous briefing, the court will simply apply the current version of the section to all of defendant's conduct, regardless if it occurred before March 31, 2004.

Because plaintiff filed her complaint on July 25, 2006, conduct she discovered since July 25, 2004 may be considered for purposes of plaintiff's FCRA claims, pursuant to the current § 1681p.  Initially, the court notes that plaintiff previously stated she is making no claims based on any conduct prior to her May 2003 settlement with defendant.[28]

Defendant concedes its September 6, 2005 response to Equifax/CSC's notification

---

[26]15 U.S.C. § 1681p.  Alternatively, the current FCRA section provides the statute of limitations is five years after the date on which the violation that is the basis for the liability occurs when that date is earlier than two years after the date of discovery.  *Id.*  Plaintiff does not contend the five-year statute of limitation applies to the case at bar.

[27]*See Miller v. Wells Fargo & Co.*, Civil Action No. 3:05-CV-42-S, 2008 WL 793683, at *4 (W.D. Ky. Mar. 24, 2008).

[28]Doc. 174, at 4 n.3.

that plaintiff disputed the debt is within the statute of limitations period.  Plaintiff lists various actions defendant took between July 25, 2004 and July 25, 2006, including that defendant verified the debt to Equifax/CSC, failed to conduct a reasonable investigation before doing so, failed to delete its entry from TransUnion, and failed to send a delete instruction to Experian until May 2, 2006.  As stated above, once defendant received notice of plaintiff's dispute to Equifax/CSC, defendant had duties to *all* consumer reporting agencies, not just Equifax/CSC.  The court finds all of the alleged violations stemming from plaintiff's dispute to Equifax/CSC fall within FCRA statute of limitations and therefore are not time-barred.

Defendant argues plaintiff may not rely on the discovery rule because she was aware of the alleged misreporting as early as October 2003.  Unfortunately, plaintiff fails to address § 1681p's discovery rule much less assert any violations that occurred prior to July 25, 2004 and that she first discovered between July 25, 2004 and July 25, 2006.  Because plaintiff did not dispute defendant's argument that the discovery rule does not apply, the court grants defendant's motion for summary judgment as to all of its alleged violations occurring before July 25, 2004.  As stated above, however, all of defendant's alleged violations stemming from plaintiff's formal dispute to Equifax/CSC fall within FCRA's statute of limitations.

3.      Plaintiff's Claimed Damages

Although plaintiff addresses the issue, defendant does not argue it is entitled to judgment as a matter of law on the issue of whether it acted negligently.  Defendant does,

however, seek summary judgment on the basis that plaintiff did not sustain any actual damages, barring her claim for negligent noncompliance with FCRA.[29]

Damages are an element of plaintiff's negligent noncompliance claim and, without evidence of damages, summary judgment is appropriate.[30]  Attorney's fees and the costs of an action are recoverable in a negligent noncompliance action only in the event of a "successful action to enforce any liability."[31]  Plaintiff must therefore first establish actual damages sustained to be successful on her negligent noncompliance claim and then be entitled to attorney's fees and costs.[32]

a.    Non-economic Damages

In addition to the economic damages discussed below, plaintiff seeks damages for embarrassment and humiliation.[33]  Plaintiff withdrew her previous claim of damages for

---

[29]In a footnote, defendant does recognize that actual damages are not required to prove willful noncompliance with FCRA.  *See Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1168 (D. Kan. 2008) (noting that a showing of actual damages is not required to recover statutory damages under § 1681n(a)(1)(A) for willful noncompliance).

[30]*Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349, 1355-56 (N.D. Ga. 2006); *see also McKinley v. CSC Credit Servs., Inc.*, No. 05-2340 ADM/JJG, 2007 WL 1412555, at *6 (D. Minn. May 10, 2007) (granting summary judgment on negligent violation claim where plaintiff proffered insufficient evidence of actual damages).

[31]§ 1681o(a)(2).

[32]*See McKinley*, 2007 WL 1412555, at *6.

[33]Doc. 174, at 22.  Plaintiff also seeks attorney's fees and costs, which alone are insufficient for her to meet the damages element of her negligent noncompliance claim, as explained above.  Additionally, plaintiff seeks statutory and punitive damages in conjunction with her willful noncompliance claim.

mental and emotional pain and anguish.[34]  Defendant argues plaintiff has not met her burden

for recovering humiliation damages.  The court assumes defendant is suggesting plaintiff's

evidence consists of conclusory statements.

Actual damages under FCRA may include humiliation and embarrassment, even if the

consumer suffered no out-of-pocket losses.[35]  A plaintiff must present evidence beyond

conclusory allegations;[36] however, a plaintiff's own testimony is sufficient evidence to

establish emotional damages.[37]

The court rejects defendant's argument that plaintiff's evidence consists of merely

conclusory statements.  Indeed, plaintiff set forth many statements she made at her deposition

regarding her feeling humiliated in various ways, including telling creditors multiple times

the debt had been paid, being told by defendant multiple times the debt would be removed

when it was not even several months later, and being unable to care for her children.  The

court denies defendant's motion for summary judgment on the issue of plaintiff's claim for

damages based on humiliation and embarrassment.

> b.      Personal Economic Damages

Defendant argues that plaintiff has not shown the increases in the interest rates on her

---

[34]Doc. 154.

[35]*Stevenson v. TRW Inc.*, 987 F.2d 288, 296 (5th Cir. 1993).

[36]*Cole v. Am. Family Mut. Ins. Co.*, 410 F. Supp. 2d 1020, 1025 (D. Kan. 2006).

[37]*See Stevenson*, 987 F.2d at 297; *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006).

personal credit cards were based upon defendant's entry on her credit report.  Specifically, defendant argues plaintiff has presented no evidence the increases were based on defendant's entry, as opposed to the fact she had made late payments previously and had an outstanding credit card debt of approximately $33,000.  Further, defendant argues that plaintiff has no personal knowledge defendant's entry was a factor in the decisions and may not speculate as to the reasons.  Defendant also argues plaintiff's deposition testimony regarding the reasons a representative with one of the credit companies gave her is hearsay, which may not be considered on a motion for summary judgment.

Plaintiff fails to even address her claim for economic damages based on increased interest rates on personal credit cards in the analysis section of her summary judgment brief. Plaintiff did set forth facts that her interest rate increased after defendant's entry appeared on her credit report and her credit score went up after the entry was removed.  As mentioned above, plaintiff also relies on a statement by a representative of a credit card company giving the reason for the interest rate increase.

For summary judgment purposes, a "plaintiff need only produce evidence from which a reasonable trier of fact could infer that the inaccurate items on the plaintiff's credit report were a substantial factor in the potential creditors' decisions to deny his applications for credit."[38]  The plaintiff in a FCRA case need not eliminate the possibility that other factors,

---

[38]*Frost v. Experian*, No. 98 CIV. 2106 JGK JCP, 1999 WL 287373, at *8 (S.D.N.Y. May 6, 1999).

including correct adverse entries, also entered into the decision.[39]  But "mere speculation is not evidence of damages."[40]

One court found that a FCRA plaintiff, who was a mortgage loan officer, had insufficient evidence to avoid summary judgment on his claim for damages due to a higher interest rate, when he only provided his testimony about discussions with the creditor's representatives and testimony from his co-worker and himself.[41]  There, the plaintiff applied for a mortgage while in the midst of his dispute with a credit reporting agency and claimed that, if the credit entry at issue had not been on his account, he would have received a lower interest rate.[42]  The court noted the plaintiff did not have personal knowledge that the higher interest rate was due to the credit entry at issue and found his evidence too speculative.[43]

Plaintiff did not address defendant's argument that the credit card representative's statement is hearsay.  Of course, hearsay testimony may not be considered in ruling on a motion for summary judgment.[44]  The court will therefore not consider plaintiff's deposition testimony regarding what a credit card representative told her about the interest rate increase.

---

[39]*Id.*

[40]*McKinley*, 2007 WL 1412555, at *4.

[41]*Id.*

[42]*Id.* at *2.

[43]*Id.* at *4.

[44]*Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1226 (D.N.M. 2006).

Plaintiff's evidence that defendant's entry on her credit report caused her interest rates on her personal credit cards to increase is very weak.  The court, however, finds plaintiff's evidence of multiple rates increasing relatively soon after the entry was made on her reports, and the subsequent increase in her credit score when it was removed, is sufficient evidence from which a reasonable trier of fact could infer the defendant's entry on plaintiff's credit report was a substantial factor in the creditors' decisions to increase plaintiff's interest rates.

Although plaintiff admits she had made late credit payments and she had credit card debt of approximately $33,000, the court finds she need not eliminate the possibility that other factors, including correct adverse entries, also entered into the decision.  The court finds that, given plaintiff's multiple interest rate increases, and the timing of the increases, plaintiff's evidence is distinguishable from the evidence presented by the plaintiff in the *McKinley* case cited above.  The court therefore denies defendant's motion for summary judgment on the issue of plaintiff's claim for damages related to increased interest rates on her personal credit cards.

c.    Business Economic Damages

Plaintiff seeks damages to her businesses relating to denials of credit for a bowling alley scoring system and subsequent lost sales and repair costs to her current scoring system. Defendant requests the court grant summary judgment on plaintiff's claim for damages related to her businesses, including from denials of credit for business purposes, lost sales, and repair costs.  Plaintiff interprets defendant's argument as a contention that she cannot

recover any damages under FCRA because she operates a business.  Notably, defendant does not argue plaintiff cannot recover any damages simply because she is a sole proprietor. Instead, defendant merely argues that plaintiff may not recover damages related to her businesses.

Plaintiff argues sole proprietors may maintain actions under FCRA for violations of the statute and damages they have sustained individually.  Defendant does not dispute this.[45] Plaintiff failed to otherwise address her claim for business damages, and the court could find that she does not contest defendant's argument regarding business damages.  However, because plaintiff may be attempting to argue by implication that damages related to her sole proprietorship are damages sustained individually, the court will address defendant's argument.

FCRA applies only to "consumer reports."  The statute defines consumer reports as:

> any written, oral, or other communication of any information by
> a consumer reporting agency bearing on a consumer's credit
> worthiness, credit standing, credit capacity, character, general

---

[45]In arguing plaintiff is not entitled to recover damages to her business, defendant states plaintiff's account with it was related to Tilley Sports Apparel, a business venture, rather than plaintiff's personal uses.  However, it fails to argue how the commercial nature of the original debt relates to the damages plaintiff may seek.

Although damages related to commercial transactions are not recoverable, it does not follow that just because the information at issue (i.e., plaintiff's alleged debt to defendant) was regarding a commercial transaction, defendant is somehow insulated from all liability under FCRA with regard to that transaction.  *Johnson v. Wells Fargo Home Mortgage, Inc.* (*Johnson I*), No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *8 (D. Nev. Oct. 29, 2007). Indeed, "[s]ubsequent credit reports issued for 'consumer purposes' containing the inaccurate information arguably do fall under the coverage of the FCRA."  *Id.*

reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.[46]

Although not explicit, defendant seems to argue that any credit reports furnished to potential creditors when plaintiff was seeking credit for business purposes were not consumer reports within the meaning of FCRA, and therefore she may not obtain damages to her businesses.

One court explained the necessity of a consumer report to a FCRA plaintiff's ability to recover economic damages claims as follows:

[T]he court turns to Plaintiff's alleged damages resulting from a third-party's decision to deny Plaintiff credit, increase his interest rates and cancel or reduce his existing lines of credit due to Defendant's erroneous reporting.  In order to be recoverable as actual damages under the FCRA, those decisions must have been made based on the erroneous information reported by Defendant.  In order to show the decisions were made based on that erroneous information, the decision-makers must necessarily have had knowledge of the erroneous information.  In order to acquire such knowledge, the decision-makers must have obtained a credit report containing the erroneous information.  And, in order to be subject to the FCRA, the credit report obtained must have been a consumer report as defined under the FCRA.  Thus, a consumer report is vital to Plaintiff's claim.   Without the consumer report, a plaintiff would essentially be able to claim every undesirable financial event he encountered since the defendant's violation without actually proving the event occurred because of defendant's violation, rather than due to some other reason.   Accordingly, the

_____

[46]15 U.S.C. § 1681a(d)(1).

definition of a consumer report is crucial because it controls the
FCRA's applicability.[47]

In determining whether a particular report is a consumer report, some courts have limited consideration to examining the purpose for which a particular report is requested by the report's user.  Other courts have applied FCRA more broadly, focusing on the purpose for which the credit report was sought and the purpose for which the credit reporting agency believed it was collecting the information.[48]

Here, plaintiff does not dispute the denials of credit related to her bowling alley scoring system and subsequent lost sales and repair costs were business and commercial transactions.[49]  She also does not allege a consumer report was involved in any of the transactions related to credit for the scoring system, either because the purpose of the report was consumer in nature or that the credit reporting agency issuing the report believed it was collecting information for other than business or commercial purposes.[50]

---

[47]*Johnson v. Wells Fargo Home Mortgage, Inc.* (*Johnson II*), 558 F. Supp. 2d 1114, 1123 (D. Nev. 2008).

[48]*Id.* at 1123-24 (citing cases); *Breed v. Nationwide Ins. Co.*, No. 3:05CV-547-H, 2007 WL 1231558, at *1-*2 (W.D. Ky. Apr. 24, 2007).

[49]*Cf. Apodaca*, 417 F. Supp. 2d at 1228 (finding an issue of fact existed as to whether the plaintiff applied for a credit card in her capacity as a consumer or as an agent for her or her husband's business).

[50]*Cf. Johnson II*, 558 F. Supp. 2d at 1127 (analyzing plaintiff's claimed business damages because, although plaintiff did not present evidence a consumer report was used in the transactions, defendant attached evidence that consumer reports may have been used in certain transactions).

"[S]everal courts have held that where the purpose of a plaintiff's credit application was to secure credit for business purposes, as opposed to personal, family or household purposes, the reporting agency's conduct was not covered by the [FCRA]."[51]  One court, however, withdrew its previous order dismissing the plaintiff's FCRA claims for actual damages because such damages arose from commercial transactions.  The court noted most circuits suggest the expectations of the credit reporting agency at the time it prepared the credit reports and at the time it collected the information contained in the reports should be considered, and no evidence had been presented as to those prongs.  The court therefore allowed the plaintiff to pursue his FCRA claims "at least through trial."[52]

The court respectfully disagrees with the *Breed* Court's cautious approach to wait until trial to see if the plaintiff can present any evidence of a consumer report.  Here, plaintiff has provided *no* evidence a consumer report was involved in her attempts to obtain credit for the scoring system.  The court agrees with defendant that plaintiff has not set forth *any* specific facts showing there is a genuine issue for trial regarding the existence of a consumer report in conjunction with plaintiff's attempts to obtain business credit.

One plaintiff attempting to seek business damages argued that because his businesses were sole proprietorships, his case was distinguishable from cases holding plaintiffs could

---

[51]*Natale v. TRW, Inc.*, No. C 97-3661 CRB, 1999 WL 179678, at *3 (N.D. Cal. Mar. 30, 1999) (citing cases); *see also Apodaca*, 417 F. Supp. 2d at 1228; *Frost v. Experian*, No. 98 CIV. 2106 JGK JCP, 1999 WL 287373, at *5 (S.D.N.Y. May 6, 1999); *Yeager v. TRW, Inc.*, 961 F. Supp. 161, 162-63 (E.D. Tex. 1997).

[52]*Breed*, 2007 WL 1231558, at *2.

not seek business damages.[53]  Although plaintiff does not explicitly make this argument, Tilley Sports Apparel is a sole proprietorship.  The court holds that the form of ownership of plaintiff's business is immaterial.[54]  Further, plaintiff's bowling alley appears to be a limited liability company.  "Because the FCRA only protects individual consumers, losses to [p]laintiff's limited liability compan[y] are not recoverable under the FCRA."[55]

The court therefore grants defendant summary judgment on plaintiff's claim for damages from the denials of credit for business purposes, including lost sales and repair costs.  As stated above, the court denies defendant's motion on the issue of plaintiff's claimed emotional damages and damages relating to her personal credit cards.

4.      Evidence of Willfulness

In its memorandum in support of the instant motion, defendant seeks summary judgment on plaintiff's defamation claim on the basis it did not act willfully and therefore plaintiff's defamation claim is preempted by FCRA.  This argument is addressed below.  In making this argument, defendant states that no evidence shows it acted maliciously or with willful intent to injure plaintiff.  Defendant then argues in a footnote that plaintiff's claim for willful noncompliance with FCRA is also barred by undisputed evidence.  Plaintiff does address defendant's argument that it did not act willfully.  In its reply, defendant then

---

[53]*Natale*, 1999 WL 179678, at *4.

[54]*Id.*

[55]*Johnson II*, 558 F. Supp. 2d at 1132.

explicitly argues that plaintiff has no evidence to allow a jury to consider a willful violation of FCRA and punitive damages.

The phrase "willfully fails to comply" in § 1681n(a) includes reckless violations of FCRA, as well as knowing violations.[56] Plaintiff claims defendant willfully violated FCRA because it only looked at its Oracle system, which it had failed to update, did not follow its alleged procedure, and verified the debt despite its knowledge of the settlement.

Defendant argues it did not willfully violate FCRA because plaintiff did not contact defendant about the debt being reported until September 24, 2005. Plaintiff states she contacted Capstone in November 2003 about defendant's credit entry against her. Plaintiff argues that Capstone was defendant's agent and therefore the knowledge of Capstone was the knowledge of its principal, defendant. Defendant argues Capstone was an independent contractor and plaintiff's notice to Capstone did not equate notice to defendant. For the reasons stated below, the court need not decide the issue of whether Capstone was defendant's agent.

Capstone e-mailed defendant in November 2003 regarding the debt appearing on plaintiff's credit reports. Plaintiff argues this created actual knowledge on the part of defendant that the debt was being reported to the credit agencies. Further, plaintiff notes defendant had approved the settlement before she paid it. In addition to claiming defendant

---

[56]*Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2208-09 (2007); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1169 (D. Kan. 2008).

failed to fully reinvestigate the debt or follow its own practices, plaintiff argues defendant failed to consider the information available to it, including its knowledge of the settlement and that the debt was appearing on plaintiff's credit reports.  Plaintiff therefore concludes defendant acted willfully by recklessly conducting its reinvestigation.

Although defendant admits it learned of the settlement in the middle of November 2003,[57] defendant fails to even address plaintiff's argument that the approval of the settlement and the notice defendant received from Capstone's e-mail form the basis of a willful violation.  Defendant argues that the most plaintiff can show is defendant could have updated its Oracle system sooner.  Defendant concludes this is an insufficient showing of willfulness as a matter of law.

The court rejects defendant's argument.  Defendant's approval of the settlement of the debt and its receipt of the e-mail from Capstone create a genuine issue of material fact as to what information defendant had available when it reinvestigated the debt in 2005.  It is therefore for a jury to decide whether defendant recklessly conducted its reinvestigation, in willful violation of FCRA.

B.      Defamation Claim

        1.      Statute of Limitations

 Defendant argues that only one of its contacts with the credit reporting agencies can form the basis of plaintiff's defamation claim, because the other contacts are barred by the

---

[57]Doc. 193, at 12.

statute of limitations.  Defendant only cites to the one-year Kansas statute of limitation for libel and slander actions[58] and ignores the choice of law issue.  In the pretrial order, the parties agreed plaintiff's common law defamation claim was governed by Georgia, Kansas, or Maryland law.[59]  Fortunately, like Kansas, both Georgia and Maryland have one-year statute of limitations for defamation actions,[60] and the court does not need to address the choice of law issue.

Defendant also did not address when the statute of limitations begins in any of the three states.  The one-year statute of limitations in Kansas and Georgia begins when the alleged defamatory statement is published.[61]  The Maryland statute of limitations, however, begins when the plaintiff knows or reasonably should know of the alleged defamatory statement.[62]

Because plaintiff filed the instant case on July 25, 2006, defendant states no conduct occurring before July 25, 2005 can form the basis for plaintiff's defamation claim. Defendant concludes the only contact it had with the credit reporting agencies during this

---

[58]K.S.A. § 60-514(a).

[59]Doc. 174, at 2, para. 3(d).

[60]Ga. Code Ann. § 9-3-33; Md. Code Ann., Cts. & Jud. Proc. § 5-105.

[61]*Geolas v. Boy Scouts of Am.*, 23 F. Supp. 2d 1254, 1258 (D. Kan. 1998); *Clark v. Clark*, 969 F. Supp. 1319, 1327 (S.D. Ga. 1997).

[62]*King v. Marriot Int'l, Inc.*, 195 F. Supp. 2d 720, 728 (D. Md. 2002); *Shepard v. Nabb*, 581 A.2d 839, 843-44 (Md. Ct. Spec. App. 1990).

one-year period was its September 6, 2005 response to Equifax/CSC's notification that plaintiff disputed the debt.  This response included the debt information was being reported correctly and that the debt was "charged to profit and loss."

Plaintiff failed to even address the statute of limitations for her defamation claim. Plaintiff therefore did not dispute the applicability of a one-year statute of limitations. Plaintiff also failed to set forth any other false statement defendant made to the credit reporting agencies between July 25, 2005 and July 25, 2006, or any false statement defendant made prior to July 25, 2005 that she first discovered or should have discovered between July 25, 2005 and July 25, 2006.  The court therefore finds the only communication defendant had with the credit reporting agencies that can form a basis for plaintiff's defamation claim is its September 6, 2005 response to Equifax/CSC's notification that plaintiff disputed the debt. To the extent plaintiff's defamation claim is based on any other statement defendant made to the credit reporting agencies, it is barred by the statute of limitations.

2.      Preemption by FCRA

Defendant argues plaintiff's defamation claim is preempted by FCRA.  Although defendant did not throughly address both provisions, the statute contains two separate preemption provisions that arguably apply in this case: (1) § 1681t(b)(1)(F), which provides furnishers of credit information with absolute immunity; and (2) § 1681h(e), which provides furnishers of credit information with qualified immunity.  Plaintiff failed to even mention § 1681t(b)(1)(F), let alone address its applicability to her defamation claim.

Section 1681t(b)(1)(F), the absolute immunity provision, provides that "[n]o requirement or prohibition may be imposed under the laws of any State–with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."  Section 1681h(e), the qualified immunity provision, states:

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

Courts are split on how to reconcile FCRA's two immunity provisions and follow three distinct approaches.[63]  Neither the Tenth Circuit nor any other circuit court has addressed the issue.[64]  Notably, plaintiff failed to even address the applicability of § 1681t(b)(1)(F), although defendant briefly addressed it.  Regardless, the court will follow the undersigned's previous opinion reconciling FCRA's two immunity provisions.

Pursuant to § 1681t(b)(1)(F), to the extent defendant's conduct falls within the "subject matter regulated under . . . section 1681s-2," plaintiff's state law defamation claim

---

[63]*See Greene v. Capital One Bank*, No. 2:07-CV-687 TS, 2008 WL 1858882, at *5-*6 (D. Utah Apr. 23, 2008); *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1354 n.4 (D. Kan. 2006); *Barnhill v. Bank of Am., N.A.*, 378 F. Supp. 2d 696, 699-703 (D.S.C. 2005).

[64]*Holland v. GMAC Mortgage Corp.*, No. 03-2666, 2006 WL 1133224, at *11-*12 (D. Kan. Apr. 26, 2006); *see also Lofton-Taylor v. Verizon Wireless*, 262 F. App'x 999, 1002-03 (11th Cir. 2008) (declining to decide the issue); *Beyer v. Firstar Bank N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (same).

against defendant is preempted.  Defendant's conduct must be broken down into two discrete time periods: (1) the time period between plaintiff's May 2003 settlement of the debt and when defendant first received notice of plaintiff's dispute to CSC; and (2) the period after defendant received notice of plaintiff's dispute to CSC.[65]  Conduct falling in the second time period is regulated by § 1681s-2(b)(1), and is therefore completely preempted by § 1681t(b)(1)(F).[66]

Defendant's only communication not barred by the statute of limitations occurred after it received notice of plaintiff's dispute and therefore falls within the second time period. Accordingly, any state law defamation claim predicated on defendant furnishing inaccurate information to a consumer reporting agency after it received notice of plaintiff's dispute to CSC is completely preempted by § 1681t(B)(1)(F).  Because the statute of limitations barred any defamation claims based on defendant's other communications to the consumer reporting agencies, the court need not address the applicability of § 1681h(e) and whether defendant's conduct was willful.  The court therefore grants defendant summary judgment on plaintiff's defamation claim.

## V.  Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

---

[65]*See Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1194 (D. Kan. 2002).

[66]*See id.* at 1194-95.

1.     Defendant's motion for summary judgment **(doc. 179)** is granted in part and denied in part.  Specifically, defendant's motion is granted with respect to plaintiff's defamation claim. With respect to plaintiff's claims for negligent and willful noncompliance with FCRA, defendant's motion is granted only as to the alleged violations that are barred by the statute of limitations and to the extent plaintiff seeks damages related to her businesses.  In all other respects, defendant's motion is denied.

2.     As discussed during the informal telephone status conference among counsel and the court on February 27, 2009, this case is now specially set for jury trial on **May 5, 2009, at 9:00 a.m.**, with an estimated trial time of 2-3 days.  The court will conduct a limine and status conference on **May 4, 2009, at 3:00 p.m.**  *See* doc. 199.

3.     The parties confirmed they unsuccessfully mediated this case with Warren McCamish.

4.     Plaintiff did not supplement her economic damages, as required by the pretrial order (doc. 174, at 22 n.10), and is therefore not seeking more than $111,652,97 in economic damages. As stated above, however, plaintiff may not recover *any* damages related to her businesses.  Defendant expects to file a motion in limine precluding plaintiff from presenting evidence at trial of damages related to her businesses.

5.     The parties have confirmed that neither party has any expert witnesses.

6.     The May 2, 2008 deadline in paragraph 4(b) of the pretrial order for the parties to file business records stipulations is extended to **April 2, 2009**.

7.    The deadline in paragraph 18(d)(2) of the pretrial order for the parties to file their jury instructions[67] is amended to **April 14, 2009**.  Any objections to proposed jury instructions shall be filed no later than **April 21, 2009**.

Dated this 24th day of March, 2009, at Kansas City, Kansas.


 s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[67] Without limitation of the specific language in the pretrial order, counsel are reminded that proposed jury instructions must be submitted in compliance with Fed. R. Civ. P. 51 *and* D. Kan. Rule 51.1. Under D. Kan. Rule 51.1, the parties and the attorneys have the joint responsibility to attempt to submit one agreed set of preliminary and final instructions that specifically focuses on the parties' factual contentions, the controverted essential elements of any claims or defenses, damages, and any other instructions unique to this case. In the event of disagreement, each party shall submit its own proposed instructions with a brief explanation, including legal authority as to why its proposed instruction is appropriate, or why its opponent's proposed instruction is inappropriate, or both.