IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CAROL BETH TILLEY, )
)
        Plaintiff, )
)
v. ) Case No. 06-2304-JPO
)
GLOBAL PAYMENTS, INC., )
)
        Defendant. )

## **MEMORANDUM AND ORDER**

I. Background

This is a case brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. The plaintiff, Carol Beth Tilley, who obtained a favorable jury verdict against the defendant, Global Payments, Inc., has filed a motion for an award of statutory attorney's fees **(doc. 253)**.

The jury made specific and separate findings that Global had violated the FCRA negligently and recklessly, and awarded Tilley $5,000 in compensatory damages for embarrassment and humiliation; on the reckless violation claim, the jury also awarded $100,000 in punitive damages (doc. 243). The undersigned U.S. Magistrate Judge, James P. O'Hara, who presided over trial with the parties' consent (*see* doc. 194), entered judgment on the jury verdict for $105,000, plus costs (doc. 245). Global timely renewed its motion for judgment as a matter of law and, in the alternative, moved for a new trial (doc. 248). At

the court's suggestion, briefing on Global's post-trial motion was deferred so that a settlement conference could be conducted by U.S. Magistrate Judge David J. Waxse. That conference was unsuccessful. Later, the parties reached a $50,000 settlement on all matters except the amount of attorney's fees and costs; however, the parties agreed that any award by the court of attorney's fees (exclusive of costs) would be capped at $110,000 (*see* Ex. 3 to doc. 259, at Section 7.).

In support of Tilley's request for the maximum amount of fees that may be awarded under the agreed cap, she has filed a legal memorandum (doc. 254), an invoice summarizing the $170,241 in time purportedly spent by her attorney and paralegal on this case (doc. 259), and a $6,242 bill of taxable costs (doc. 257). Global has filed a response arguing that Tilley only should be awarded $55,000 in fees (doc. 264). Tilley has filed a reply brief (doc. 265), and the matter is now fully submitted.

## II. Applicable Legal Standards

Where an individual brings a successful action to enforce liability under the FCRA, she is entitled to recover the "costs of the action together with reasonable attorney's fees as determined by the court."[1] Like many statutes that allow recovery of attorney's fees, the fee award is mandatory, but still the court has discretion to determine what amount is reasonable.[2]

---

[1] 15 U.S.C. § 1681o(a)(2); *see also* 15 U.S.C. § 1681n(a)(3).

[2] *See, e.g.*, *Gardner v. Sprint/United Management Co.*, No. 08-2559, 2009 WL 1917408, at *2 (D. Kan. July 2, 2009) (evaluating fees under the Fair Labor Standards Act

There are few reported cases from the Tenth Circuit and the District of Kansas construing and applying the FCRA's fee provision, but there are many cases evaluating fees under statutes with very similar provisions.[3] The Tenth Circuit generally recognizes the interchangeability of caselaw interpreting similar attorney's-fees statutes.[4]

In evaluating the reasonableness of fees authorized by statutes like the FCRA, courts generally follow a two-step approach. The first step is to multiply the number of hours reasonably expended by a reasonable hourly fee, which results in the so-called "lodestar" amount. The second step allows the court to adjust the lodestar up or down, as necessary, considering several factors. These factors, depending on the particular case, include the time and labor required, the novelty and difficulty of the questions raised by the case, the skill required to litigate the matter, whether the attorney had to forego other employment, the experience or reputation of the attorney, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases.[5]

---

("FLSA")).

[3]*See, e.g.*, *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465, 2009 WL 57133, at *1 (D. Kan. Jan. 8, 2009) (noting that the FLSA allows a prevailing plaintiff to recover reasonable attorney's fees and costs, much like the FCRA); *Holland v. GMAC Mortg. Corp.*, No. 03-2666, 2007 WL 293931, at *1 (D. Kan. Jan. 29, 2007) (evaluating the reasonableness of attorney's fees under the Real Estate Settlement Procedures Act ("RESPA"), which allows a prevailing plaintiff to recover costs and any attorney's fees the court deems reasonable under the circumstances).

[4]*Browder v. City of Moab*, 427 F.3d 717, 720 (10th Cir. 2005).

[5]*Holland*, 2007 WL 293931, at *5; *Brockmann v. Bd. of County Com'rs of County of Shawnee*, No. 07-4103, 2009 WL 10954453, at *1 (D. Kan. Apr. 22, 2009).

III. Analysis

Global acknowledges both the parties' negotiated cap and the court's "vast discretion" (doc. 264 at 1, 8), but argues that Tilley should only recover $55,000 in fees because her lawyer "over-litigated" the case (*id*. at 1). According to Global, the $170,241 invoiced by Tilley's lawyer and paralegal is "outrageous," and even the $110,00 sought by Tilley represents a "staggering sum" in relation to the nature and size of the case (*id*.).

Global does not object to the hourly rate charged by Tilley's attorney or paralegal.[6] Global only argues that the number of hours they spent is unreasonable and that in any event the facts of this case warrant a big downward fee adjustment. Specifically, Global argues that many of the claimed hours should be disallowed because they were spent working on dismissed or abandoned claims, that some of the hours claimed relate to other defendants, and that Tilley's counsel spent too much time working on the case.

Tilley seeks compensation for 771.7 hours of work by her attorney and 123.5 hours of work by the paralegal (doc. 254 at 9). Of course, it is the burden of the requesting party to accurately document the hours expended by submitting time records.[7] Tilley has

---

[6]The invoiced rate for Tilley's attorney, Gregory M. Dennis, is $200 per hour. The invoiced rate for Mr. Dennis' paralegal is $100 per hour. Based on the information submitted in support of Tilley's motion, and the court's own knowledge of prevailing rates charged by attorneys in the Kansas City area, the court has no hesitancy finding these rates are reasonable under the circumstances for the two individuals in question. It bears mentioning, however, that depending on the skill and experience of the trial lawyer, and also depending on the type of matter being litigated, some prevailing rates in the Kansas City legal community are considerably lower—*and higher*—than $200 per hour.

[7]*Holland*, 2007 WL 293931, at *1.

submitted two separate invoices documenting the hours her attorney and his staff spent working on this case (exs. 1 and 2 to doc. 259). Tilley's motion indicates it is the first of these invoices (ex. 1 to doc. 259) that has been limited to work regarding claims against Global (doc. 254 at 1-2; doc. 265 at 7).

Global argues that some of Tilley's hours should be disallowed because "[m]ost of Plaintiff's claims were either (i) gutted by Defendant's largely successful motion for summary judgment or (ii) abandoned by Plaintiff before trial" (*see* doc. 264 at 2). Specifically, Global argues that 70 hours spent working on Tilley's response to Global's motion for summary judgment should be disallowed since Tilley's response was "largely unsuccessful."

Actually, the court's summary-judgment ruling was a "mixed bag" for *both* parties (*see* doc. 200). Since parts of this case survived summary judgment, Tilley's response to Global's motion obviously wasn't entirely for naught. And if complaints commonly heard these days from lawyers are given any credence, it is a daunting task to get anything more than a garden variety tort or contract case past summary judgment in federal court. Regardless, on the record presented here, the mere fact that Global may have been mostly successful with its summary-judgment motion certainly doesn't justify a complete exclusion of the time Tilley's attorney spent responding to the motion, nor a complete exclusion of the time spent working on claims that were dismissed as a result of the court's ruling.[8] That

---

[8]*See Browder*, 427 F.3d at 722 ("'Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply

said, the court finds the 70 hours claimed for Tilley to respond to Global's 12-page summary judgment brief is excessive. Tilley's lawyer elected to file a 35-page responsive brief, evidently spending nearly two full work-weeks doing so. That's over-kill in a routine FCRA case. At least half of this invoiced time must be excluded from the lodestar, i.e., the 70 hours claimed were not reasonably expended.

Global also asserts that some of the hours claimed by Tilley are for work done on claims against the several other defendants Tilley sued in this case. Specifically, Global points to a total of 92.8 hours that supposedly are not compensable for this reason. The court has reviewed the billing statement entries specified by Global. It appears that some of this time was in fact dedicated to work not involving Global. The challenged billing entries group together several tasks. This type of block billing is not prohibited. As a practical matter, though, it makes it very difficult to discern exactly how much time was spent on each specific task.[9] Having examined the tasks listed under the entries specified by Global, the court concludes that *at least* half of the 92.8 claimed hours are not properly attributable to Global. Conservatively, therefore, the court has excluded 46.4 hours from the lodestar.

Global next asserts that the 420 invoiced hours supposedly spent by Tilley's attorney and paralegal in trial preparation and trying the case is excessive. For the reasons explained

---

because the district court did not adopt each contention raised.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))).

[9]*See Wilhlem*, 2009 WL 57133, at *3-*4 ("The Tenth Circuit discourages block billing . . . [but] does not mandate that block-billed time be wholly denied . . . .").

below, the court agrees.

Global correctly points out that the trial in this case was a short one—it lasted less than three full days. And those three days included generous time that was allowed for counsel to participate in voir dire and the time spent by the jury deliberating their verdict. Further, Global is correct that the short trial only involved three live witnesses, with the bulk of the testimony consisting of reading designated parts of deposition transcripts.

Before wading into the thicket of Tilley's time entries for trial preparation, for the sake of perspective, the court believes it important to bear in mind how things work in the situation where a court is not called upon to review and set fees. When a private practitioner sends a bill to his client, it's not as simple as just describing what work was done and multiplying the number of hours spent by the lawyer's hourly rate. Sound judgment must be used to separate what arguably *could* be billed to the client (who often is unsophisticated in such matters) from what *should* be billed to the client. More bluntly stated, merely because a lawyer records work on a time-sheet doesn't necessarily make it legitimate billable time. This is true regardless of whether the lawyer actually spent the recorded amount of time working or was just intentionally padding the bill.

Consistent with the above-described way in which professionally responsible lawyers carefully review and edit their pre-bills before sending the final versions to their clients, when a party to a lawsuit submits time records to a court pursuant to a statutory-fee request, a good-faith effort should be made to exclude hours that are "'excessive, redundant, or

otherwise unnecessary,'"[10] and the opposing party may request a reduction in the lodestar amount on those same grounds.[11] To the extent possible under the circumstances, the opponent should make "specific and reasonably precise objections."[12] Otherwise, the court would be forced to evaluate voluminous billing records, line-by-line, to search for something that satisfies the opposing party's general objection.[13]

Other than noting the purported "discount" inherent to the parties' agreed cap of $110,000, Tilley does not appear to have excluded any significant amount of the recorded time pursuing Global-related claims. In effect, Tilley is telling the court that, aside from a very few "no-charge" entries early in the case, nearly 100% of the Global-related invoiced time entries by her lawyer and paralegal over a span of more than three years represent good, solid time. This simply is not credible based on the undersigned judge's prior experience in private practice working for and billing clients in literally hundreds of litigated matters.

As mentioned above, even though the trial of this case took less than three full days and only involved three live witnesses, the submitted time records indicate that Tilley's

---

[10]*Holland*, 2007 WL 293931, at *1 (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)).

[11]See *Disciullo v. D'Amrosio Dodge, Inc.*, No. 06-1775, 2008 WL 4287319, at *2 (E.D. Pa. Sept. 18, 2008) (analyzing a fee request under the FCRA).

[12]*Jordan v. Equifax Info. Servs., LLC*, 549 F. Supp. 2d 1372, 1376 (N.D. Ga. 2008).

[13]*See Holland*, 2007 WL 293931, at *1 ("The court need not 'identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'").

lawyer and paralegal together spent 420 hours preparing for and trying the case; about 75% of this time was charged by counsel. For three interrelated reasons, the court finds the amount of invoiced preparation and trial time is excessive.

First, instead of starting from scratch, Tilley had the benefit of a well-developed summary-judgment record (*see* docs. 179, 180, 188, and 193) and, even more importantly, the court's detailed 33-page summary-judgment ruling (*see* doc. 200). The latter should have served as a road map dramatically narrowing the focus of the issues that remained for trial.

Second, while most civil matters require considerable time and effort to prepare for the largely separate liability and damages aspects of the case, the short trial in this case involved scant evidence of damages. The final pretrial order technically preserved Tilley's right to seek personal economic damages of $111,652.97 which she allegedly suffered as a result of Global's FCRA violations (*see* doc. 174 at 21-22). However, evidently concluding she didn't have sufficient evidence to present to the jury, Tilley abandoned that claim before trial. As a result, there wasn't even any "chalkboard" computation of damages that needed to be prepared and presented to the jury, let alone any expert testimony by an accountant or economist. Similarly, counsel didn't present any mental health professional or other expert witness to buttress Tilley's claim for non-economic damages in the form of embarrassment and humiliation. Indeed, Tilley's own testimony at trial in this regard was *very* brief, which presumably played some role in the jury's decision to award only $5,000

for embarrassment and humiliation instead of the $25,000 suggested in closing argument. The evidence of Global's net worth, submitted on the punitive damage claim, took even less time.

Third, although the summary-judgment proceedings greatly narrowed the issues and very little work was required on the damages, Tilley's lawyer supposedly spent 37.45 hours during the short three-day trial; the paralegal billed another 28.5 hours during the same period. The court acknowledges that trial days are seldom a "9 to 5" affair, but here the amount of invoiced time simply cannot be squared with a FCRA case in which the issues had been so greatly narrowed own.

By no means was the trial of this case complicated, factually *or* legally. Assuming Tilley's lawyer and paralegal worked eight-hour days in the relatively short six-week period between the court's summary-judgment ruling and trial, the submitted invoice indicates that on a combined basis they spent nearly 15 days preparing for *each* day of trial. Given the above-described way in which the issues had been narrowed for trial, the court finds this is clearly excessive.

In movie and TV courtroom dramas, powerful evidence seems to magically appear in counsel's hands for quick and easy impeachment of hostile witnesses. The court appreciates and understands that things are different in the real world. That is, for every day of trial, often it's necessary to spend a couple of days—and in some complex cases many days—performing myriad tasks. Most of these tasks are not terribly glamourous, e.g.,

preparing outlines (or at least detailed notes) for witness interrogations, voir dire, opening statement, and closing argument. All of this work must be juggled around meetings with the client and any other favorable witnesses to review their anticipated testimony, along with selecting and organizing exhibits, and researching and drafting motions in limine, trial briefs, jury instructions, etc.

Tilley's lawyer obviously was well-prepared for trial. That's generally a good thing, and it's reasonable to assume that counsel's preparation played a major role in the verdict ultimately returned by the jury. But still, the court is strongly of the view that Tilley's lawyer over-prepared this case for trial.

The bottom line is that a 15/1 ratio of trial-preparation days to trial days is excessive given the nature and posture of this particular case. That sort of preparation might be reasonable for Michelangelo to paint the Sistine Chapel but it's just not reasonable to prepare for the short trial of a straight-forward FCRA case like this one. Surely no well-informed private paying client would be reasonably expected to pay for such work.

In defense of the high amount of fees requested, Tilley argues that Global's litigation position in this case has been "aggressive" (doc. 265 at 1). Tilley cites one specific instance in which the court commented in a pretrial ruling that Global had taken a very aggressive (and ultimately unpersuasive) position on a certain legal issue (*see* doc. 167 at 7). Tilley extrapolates that Global's *entire* defense of this case therefore has been unduly aggressive.

The court is mindful of the caselaw to the effect that, although a party is entitled to

vigorously defend its position, it shouldn't come as any surprise to that party when aggressive litigation tactics on one end beget higher fees on the other.[14] The court is equally mindful that there's a fine line between strong advocacy and being overly aggressive. The former is what good lawyering is all about, while experienced trial lawyers know the latter is counter-productive. In any event, a careful review of the record indicates that Global's general approach to this case has *not* been overly aggressive. If anything, based on the court's observation of the parties' written submissions and in-court appearances, the general approach of Tilley's lawyer has been markedly more aggressive than that of Global's counsel.

Due to the way in which counsel over-prepared the case in the six weeks immediately before trial, the court finds 210 hours of those billed by Tilley's lawyer after the court's summary judgment ruling should be excluded to get to an amount *reasonably* expended. For essentially the same reasons, the court's review of the record and the submitted invoice suggests that, even beyond the work done on non-Global claims and over-working the summary-judgment motion, an additional 195 hours for discovery and pretrial proceedings must be disregarded in determining the lodestar.

To recap, although Tilley's lawyer seeks compensation for 771.7 hours, the court

---

[14]*See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1260 (10th Cir. 2005) ("An aggressive litigation strategy carries with it certain risks, one of which is that a party pursuing an aggressive strategy may, if it loses, find itself required to bear a portion of the attorneys' fees incurred by the other party in responding to that aggressiveness.").

finds that only 285.3 were reasonably expended. Specifically, the court has excluded, as time not reasonably expended, 35 hours of time responding to Global's summary-judgment motion, 46.4 hours devoted to defendants other than Global, 210 hours for trial preparation and trial, and 195 hours for discovery and miscellaneous pretrial proceedings before the court's summary judgment ruling. At counsel's $200 hourly rate, this means that only $57,060 should be included in the lodestar.

Further, based on a careful review of the submitted invoice and familiarity with the case as it progressed from date of commencement through trial, the court finds that only 30% of the $12,350 that was invoiced by the paralegal was reasonably expended. Efficiency is the basic rationale for using a paralegal to perform routine legal tasks (e.g., organizing documents, marking trial exhibits, etc.). That is, it makes sense to have such tasks performed by a person without a law degree at significantly lower hourly rates than those charged by lawyers. But here, given that Tilley's lawyer invoiced 771.7 hours supposedly working on Global-related claims and the paralegal invoiced yet another 123.5 hours, all in a fairly routine FCRA case, it appears that very little, if any efficiency was achieved for the client. Thus, the lodestar, including both the paralegal and attorney's fees, is $60,765.

As earlier indicated, once the lodestar has been calculated, several factors may be used in adjusting that amount either upward or downward to come to a reasonable amount of allowable fees.[15] The court already has explained that among the adjustment factors that

---

[15]*Wilhelm*, 2009 WL 57133, at *5.

may be applicable in a given case are the time and labor required, the novelty and difficulty of the questions raised by the case, the skill required to litigate the matter, whether the attorney had to forego other employment, the experience or reputation of the attorney involved, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. Some of these factors are necessarily subsumed in the calculation of the lodestar.[16] This is particularly true here with regard to the first factor, i.e., the time and labor required.

Tilley's lawyer did, as Global asserts, "over-litigate" the case. Having carefully considered the various arguments advanced by Tilley, the court is wholly unpersuaded that any of the other factors weighs in favor of any adjustment in this instance—upward or downward.

The court acknowledges that the most important factor in adjusting the lodestar is the "extent of a plaintiff's success."[17] The Supreme Court has stated that "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[18] In this case, Tilley won a substantial jury verdict, including an award of punitive damages. Although Tilley later decided to settle for less than half of the amount awarded by the jury, presumably at least in part to avoid the

---

[16]*Hensley*, 461 U.S. at 434; *see also Brockmann*, 2009 WL 1095453, at *1.

[17]*Hensley*, 461 U.S. at 440.

[18]*Id.*

substantial risk posed by Global's post-trial motions, and although Tilley didn't recover on all the claims she initially set out to make against Global, the extent of Tilley's success here is significant. The ultimate recovery of $50,000 in a FCRA suit is no small achievement. The fees calculated in the lodestar amount, however, adequately reflect the degree of success.

In addition to attorneys' fees, Tilley also has requested $6,242 in court costs. In support of that claim, she has filed a bill of costs outlining her expenses (doc. 257). The FCRA authorizes the award of costs to a prevailing party.[19] Global has not raised any objections to Tilley's claim for costs. Accordingly, the court finds Tilley is entitled to the full $6,242 in costs.

## IV. Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. Tilley's motion for attorney's fees, expenses, and costs is granted in part and denied in part.

2. Global shall pay Tilley $67,007, representing $60,765 in attorney's fees and $6,242 in costs.

Dated this 21st day of December, 2009, at Kansas City, Kansas.

---

[19] 15 U.S.C. § 1681o(a)(2); 15 U.S.C. § 1681n(a)(3).

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge